FREEMAN WOODBRIDGE, EXECUTOR AND TRUSTEE OF JANE A. ELLISON, DECEASED, PLAINTIFF-RESPONDENT, v. HARRY DeANGELIS, JOSEPH DeANGELIS AND ALBERT QUARANTA, DEFENDANTS-APPELLANTS, AND JOSEPH POKORNY AND ALEXANDER JAMBOR, DEFENDANTS.

Submitted May 31, 1940—Decided December 12, 1940.

For the appellants, *Edmund A. Hayes.*

For the respondent, *George S. Silzer.*

The opinion of the court was delivered by

HEHER, J. This is an action by a mortgagee against the mortgagor and successive assuming grantees. The mortgagor was not served with process. For an asserted lack of jurisdiction of the subject-matter, the cause was transferred to the Court of Chancery under *R. S.* 1937, 2:26-60, *et seq.*

It is maintained, *in limine,* that the order of transference is not a final judgment, and the appeal should therefore be

dismissed. The point is without substance. The cited statute was designed to permit the transference only where there is an utter lack of jurisdiction of the cause in the court in which it pends. The transfer is necessarily predicated upon a determination of lack of jurisdiction of the subject-matter—a judgment final in character as regards the court whence the transfer is made, since it puts an end to the action therein. *Vide Curran* v. *Carroll,* 101 *N. J. L.* 329.

But there was jurisdiction at law. The cause is ruled in this behalf by the case of *Herbert* v. *Corby,* 124 *N. J. L.* 249, affirmed at the current term of this court on the opinion rendered below by Chief Justice Brogan. 125 *Id.* 502.

Yet respondent finds what he conceives to be a difference of substance—*i. e.,* that in *Herbert* v. *Corby, supra,* there was "but one assuming grantee," and "a circuity of action is not involved, nor any of the equities." It is not well taken.

The creditor beneficiary's capacity to sue at law on a sealed instrument is not so circumscribed. One of the reasons for equitable intervention in this class of cases was that the common law procedure was not adapted to an adjudication of the controversy, since it contemplated but two sides to a case, and a community of interest on each side. But now, under the modern practice, the mortgagor may, if necessary, be joined in the action at law. *Pamph. L.* 1912, *pp.* 377, 378, §§ 4, 6, 8, 9; *R. S.* 1937, 2:27-24, 2:27-25, 2:27-28, 2:27-31. Unlike its English prototype, our Practice act permits several defendants to be sued on separate causes of action, "if the causes of action have a common question of law or fact and arose out of the same transaction." *R. S.* 1937, 2:27-38. The English statute sanctioned this course only as to plaintiffs. And judgment may be entered "in such form as the nature of the case and the recovery or relief awarded may require." *R. S.* 1937, 2:27-245. It "may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and the court may determine the ultimate rights of the parties on each side as between themselves, and may grant to a defendant any affirmative relief to which he may be entitled." *R. S.* 2:27-247. Where there is a judgment against a principal and surety, payment

by the surety is not to be considered a satisfaction of the judgment, except as to the surety, who shall have the full benefit and control of the judgment to compel repayment from the principal or contribution from the co-surety; and, on application, "the court or judge may issue an order to try the questions in controversy." *R. S.* 2:27-248.

If the obligation of the assuming grantee be viewed as grounded in the deed, *R. S.* 2:26-3.6 serves to bestow a right of action upon the mortgagee beneficiary; and, if it be deemed of lesser solemnity, *e. g.,* where, without a covenant of assumption in the deed, the mortgage was considered as so much of the consideration money, or there was an independent or subsidiary undertaking to liquidate the mortgage, the common-law action of *assumpsit,* founded on equitable principles—or of debt, depending upon the circumstances—is an available remedy. If the right of action spring from a covenant under seal, the common-law action of covenant or debt would lie. And, where the obligation is considered as arising primarily from the statute, an action in debt or *assumpsit* is on well-settled principles maintainable at law to enforce the duty thus arising. *Capraro* v. *Propati,* 127 *N. J. Eq.* 419; *Birch* v. *Baker,* 85 *N. J. L.* 660; *Paulin* v. *Kaighn,* 29 *Id.* 480; *Passaic National Bank and Trust Co.* v. *Eelman,* 116 *Id.* 279; *Lawrence* v. *Fox,* 20 *N. Y.* 268; *Keener on Quasi-Contracts,* 14, *et seq.,* 308, *et seq.* Even where there is a right of indemnity, based not upon a contractual relationship, but upon the dictates of "equity and good conscience," the common law action of *assumpsit* is an appropriate remedy. *Keener on Quasi-Contracts, p.* 25.

To hold that such actions are not cognizable at law is unduly to curtail the scope and effect of the beneficent provisions of the Practice act of 1912, *supra.* That enactment was plainly designed to mould procedure and judgments at law in large measure according to the pattern of equity. While based upon common law procedure, it effects radical changes in that system. The common law conception of the parties on each side as a unit no longer obtains. There is substituted the doctrine of the civil law that the proper parties to an action are those whose rights are involved in the controversy and are fit-

tingly enforceable in one action, subject only to such subsidiary rules as are essential to justice and order in the submission of the matters in dispute. In his exposition of the principle of this statute, Mr. Hartshorne, chairman of the committee which drafted it, said that two of its outstanding purposes were "judicial control over procedure" and "settlement of the whole controversy in one suit so far as justly practicable;" and that, under its provisions, "the judgment may be as flexible as a decree in equity." He called attention to the direction for liberal construction "to the end that legal controversies may be speedily and finally determined according to the *substantive* rights of the parties" (*Pamph. L.* 1912, *p.* 377, now *R. S.* 1937, 2:27-2), and observed that the "success" of the statute and the subordinate rules "must depend, in large measure, upon the way in which the courts interpret their provisions." *Hartshorne's Practice Act* (1912), 2, 8, 12. Note, *Forms Nos.* 301, 302, 302a, 304 and 305 in the appended schedule. See, also, *Holzapfel* v. *Hoboken Manufacturers Railroad Co.,* 92 *N. J. L.* 193. Even under the pre-existing common law system, certain rights and remedies of equitable origin had long been given recognition—*e. g., Insurance Co.* v. *Woodruff,* 26 *Id.* 541; *Paulin* v. *Kaighn, supra; Brewing Co.* v. *Clement,* 59 *Id.* 438; *Polhemus* v. *Prudential Realty Corp.,* 74 *Id.* 570.

The judgment is accordingly reversed; and the cause is remanded for further proceedings not inconsistent with this opinion.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.